WILFLEY et al. v. HELLMICH, Former Collector of Internal Revenue.

No. 8008.

District Court, E. D. Missouri, E. D.
Feb. 28, 1929.

### Findings of Fact by the Court.

DAVIS, District Judge.

From the record in this case the court finds the facts as follows, in addition to the agreed statement of facts (pages 5–8 of Record) signed by the attorneys for plaintiffs and defendant, and filed with the court:

That the principal portion of the property constituting the increased assessment, upon which tax was levied and paid and is sought to be recovered in this case, was stock in the Barnhart Mercantile Company, in which company the decedent held a majority of stock in July, 1906, when the capital stock was increased from $65,000 to $150,000; that subsequent increases were made from time to time, and in 1915 it was increased to $350,000.

That decedent had three sons, Woodson, William R., Jr., and Robert; that Woodson became an employee of said company in 1906, and William R., Jr., prior to said date, and both remained with the company continuously until the death of their father December, 1920.

That in 1916 decedent consulted with the attorney of the company with reference to increasing the capital stock of said company so as to provide for an issue of common and preferred stock, with the voting power vested in the common stock (so long as there was no default in payment of dividends on the preferred), so that decedent might give his sons a majority of the common stock of the company and thereby vest the control of said company in said sons.

That the capital stock of the Barnhart Mercantile Company was increased in July, 1917, from the then paid-up capital of $350,-000 to an authorized capital stock of $750,-000 of which $500,000 was represented by 5,000 shares of preferred stock of par value of $100 per share (of which 3,500 shares were issued forthwith as full paid, from the tangible assets of the company), and 2,500 shares of common stock, which were forthwith issued as full paid, which said 2,500 shares were paid up with good will and trade-marks of the company; that the voting power was vested in said common stock, so long as the dividends on the preferred stock were not in arrears for a period of one year.

That more than one year before said capital stock of said Barnhart Mercantile Company was increased, said William R. Barnhart had declared to the attorney for said company and to Edgar R. Skinner, secretary and substantial stockholder of said company, that he desired to have the capital stock of said company increased with an issue of preferred and common stock, which common stock would be vested with the voting power, subject to certain conditions of dividends being paid as accruing on the preferred stock, in order that he might give his three sons the majority of the common stock (in the event said sons decided to become and remain identified with the company), and thereby said three sons, by reason of said common stock holdings, would control the company.

That the two sons who were then with the company and had stock interests therein; that his third son did not come with the company until 1919, as he was in the United States Army until after the close of the World War in 1918; that after said third son came with the company in 1919 said William R. Barnhart again discussed with the attorney for the company, and said Edgar R. Skinner, his purpose to give his three sons control of the common stock of the company since his youngest son had then become identified with the company and also discussed the question of the future officers of the company, and expressed the wish that the eldest son, Woodson, be made president of the company, but stated that he was disturbed in urging such a change, as to the presidency of the company, as both Edgar R. Skinner and the brother-in-law of William R. Barnhart, to wit, Robert E. Woodson, were older than his son Woodson, and had been with the company for a longer period, that he was apprehensive that said Edgar R. Skinner and/or Robert E. Woodson might look with disfavor upon the promotion of said eldest son Woodson Barn-

hart to the presidency; that after conference with all parties concerned, and with the concurrence of said parties, Woodson Barnhart was elected president of the company by the board of directors October 4, 1919, and said William R. Barnhart was made chairman of the board of directors.

That shortly after October 14, 1919, said William R. Barnhart again consulted the attorney of the company, who had drawn the will of William R. Barnhart in 1910, as to the transfer to his said three sons sufficient shares of the common stock of Barnhart Mercantile Company to give said sons a majority of said common stock and thereby put said sons in control of said company, as he had contemplated since 1916, but had delayed, awaiting the decision of the youngest son Robert; that said William R. Barnhart was endeavoring to ascertain the value which should be placed on said common stock which he proposed to transfer to his said three sons, as he desired that said stock should be treated as an advancement to his said sons from his estate; that on December 30, 1919, said William R. Barnhart transferred to each of his three sons, Woodson Barnhart, William R. Barnhart, Jr., and Robert E. Barnhart, 375 shares of the common stock of Barnhart Mercantile Company, which, with the common stock already held by said three sons, constituted a majority of the common stock of said Barnhart Mercantile Company.

That on January 3, 1920, said William R. Barnhart added a codicil to his will, which had been executed in 1910, in which codicil he placed a value on said stock, so transferred to his three sons on December 30, 1919, of $210,000, and declared the same to be an advancement to said sons from his estate.

That said William R. Barnhart had counseled with his attorneys when he was discussing his purpose to place his sons in control of the Barnhart Mercantile Company, concerning a further purpose to identify said sons with two real estate companies in which he carried valuable real estate holdings, to wit, the Globe Realty Company and the Randolph Realty Company, and thereafter transferred one share of stock in each of said real estate companies to each of two of his three sons, having theretofore given his elder son Woodson one share in each of said real estate companies; that all of the remaining shares of stock of said real estate companies was retained by said William R. Barnhart.

That William R. Barnhart suffered a "stroke" of some kind in 1912 which kept him from his office for several weeks, and that his speech was impaired for some time thereafter; that he recovered from said impairment and resumed his business responsibilities and continued in business until the latter part of the summer of 1920; that he was active in business in 1919 and attended all the meetings of the directors of the Barnhart Mercantile Company and was at its place of business daily; that, while he was affected with high blood pressure for several years prior to his death, he only had occasion to consult a physician twice in 1919, the year when most of the transfers in question were made, and that he had never given any expression of apprehension or contemplation of death to members of his family, his lawyer, or his doctor; that he was away from the city of St. Louis part of January and February, 1920, in Florida with his wife, and on his return he visited two branch plants of the Barnhart Mercantile Company, one at Valdosta, Ga., and one at New Orleans, La.; that on his return to St. Louis he continued his activities with the Barnhart Mercantile Company until the late summer of 1920 and attended the meeting of the board of directors on July 1, 1920 and signed the minutes of the meeting; that he died December 12, 1920.

That the stock upon which the Commissioner of Internal Revenue assessed an additional tax against the estate of William R. Barnhart, which is in controversy in this case, was not transferred by said William R. Barnhart in contemplation of death, but in pursuance of a clearly expressed purpose and plan of decedent which was made in 1916, four years before his death.

The court declares the law in this case as follows:

I. That the value of the gross estate, of a citizen of the United States, dying in December, 1920, is subject to a tax by the United States government to be determined by including the value, at the time of his death, of all property, real or personal, wherever situated, to the extent of any interest therein, of which the decedent has at any time made a transfer, in contemplation of death, except in case of a bona fide sale for a fair consideration in money or money's worth; that any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration,

shall, unless shown to the contrary, be presumed to have been made in contemplation of death, within the meaning of the law; that the transfers of certain stocks, owned by William R. Barnhart, which were made within two years prior to his death of the assessed value of $238,410, are presumed to have been made in contemplation of death, which presumption may be overcome by proof that William R. Barnhart was not immediately and directly prompted by expectation of death, to make such transfers.

II. It is only when contemplation of death is the motive without which the transfers would not have been made that such transfers may be subjected to the tax; that is, the expectation of death must be the direct, specific, and immediate animating cause of the transfers.

III. "Contemplation of death" is not the general knowledge of all men that they must die at some time, but an anticipation or expectation of death in the very near future, rather than in the usual course of events; and in this state of mind, in this belief, in the near approach of death, must be found the motive for the transfer, if it is properly to be characterized as made in contemplation of death.

IV. That the "contemplation of death," in order to make the transfers of the stocks in this case subject to the tax imposed by the Commissioner of Internal Revenue, must be a present apprehension from some existing bodily condition or impending peril, known to the decedent, creating a reasonable fear that death is near at hand; and that, so arising, it must be the direct and animating cause, and the only cause, of the transfers. If such apprehension, so arising, is absent, there is not that contemplation of death intended by the law, if another adequate motive actuating the gift is shown.

V. If the taxing officials acted in reliance on the presumption that because the transfers of stock in question were made within two years previous to the death of William R. Barnhart, they were made in contemplation of death, and that presumption is inconsistent with the facts shown in the case, then the presumption is overcome and the facts must prevail; and if it is found from the evidence that decedent arrived at a definite conclusion as to the disposition of the shares of stock upon which the assessment was made, and was not impelled by contemplation of death in arriving at such conclusion, but was prompted by other just and natural reasons therefor, and transferred said shares of stock in accordance therewith, then said property so transferred is not subject to tax.